CARLSON, Presiding Justice,
for the Court:
¶ 1. The Mississippi Department of Revenue (MDOR) issued a subpoena to Pikco Finance, Inc. (Pikco), requesting documentation pertaining to Pikco’s nonpayment of finance company privilege taxes. Pikco filed a petition to quash the subpoena on the basis that MDOR’s ability to audit and tax under Mississippi’s Finance Company Privilege Tax law was preempted by the National Bank Act. The circuit court granted Pikco’s petition to quash, and MDOR appealed. The issue on appeal is whether MDOR’s use of its statutory subpoena power in administration of the Finance Company Privilege Tax is preempted by the National Bank Act. We reverse and remand, finding that Pikco is subject to the subpoena.
*1205 FACTS AND PROCEDURAL HISTORY
¶ 2. Pikco is an operating subsidiary of Pike National Bank, a national banking association chartered under the National Bank Act. Pikco is a loan company and the entity through which Pike National Bank conducts its sales financing and consumer lending. On December 16, 2010, MDOR issued a subpoena to Pikco requesting documents in conjunction with an audit regarding Pikco’s nonpayment of finance company privilege taxes from July 1, 2005, through September 30, 2010. Pikco filed a Petition to Quash Subpoena in the Circuit Court for the First Judicial of Hinds County, claiming MDOR’s ability to assess taxes and audit Pikco under Mississippi’s Finance Company Privilege Tax law was preempted by federal law, specifically the National Bank Act. A hearing took place on May 6, 2011, and the circuit court granted Pikco’s petition to quash the subpoena. The circuit court’s order concluded:
The Department’s desire to inspect property to determine whether or not Pikco Finance must pay the state’s finance company privilege tax does not qualify as an exception under any federal law and therefore the subpoena must be quashed pursuant to the [National Bank] Act. However, the Department has a right to ensure state laws are followed and has every right to file a judicial enforcement action in chancery court.
MDOR disagreed with the circuit court’s decision and filed a timely Notice of Appeal. In addition, because MDOR understood the circuit court’s ruling to be limited to whether the subpoena could be enforced, not whether the tax could be assessed, MDOR issued an assessment to Pikco for the unpaid taxes in the amount of $322,287 for July 2005 through March 2011. On June 30, 2011, Pikco filed a Motion for Contempt with the circuit court, alleging that MDOR had violated the court’s order by issuing the tax assessment. That motion is still pending.
DISCUSSION
¶ 3. This Court applies a de novo standard of review to questions of law, such as whether the trial court erred in granting a motion to quash a subpoena. Syngenta Crop Prot., Inc. v. Monsanto Co., 908 So.2d 121, 124 (Miss.2005); State v. Baptist Mem’l Hosp.Golden Triangle, 726 So.2d 554, 557 (Miss.1998).
¶ 4. The issue on appeal is whether MDOR’s use of its statutory subpoena power in administration of the Finance Company Privilege Tax is preempted by the National Bank Act.[1] To answer that question, we must first determine whether Pikco is subject to the Finance Company Privilege Tax in general.[2] The Finance Company Privilege Tax law is located at Mississippi Code Sections 27-21-1 to 27-21-19. Section 27-21-3 provides:
There is hereby levied a statewide privilege tax upon every person, firm, corporation, or association, other than banks, state or national, doing business of lending money secured by mortgages, trust receipts, retained-title[,] or purchase contracts, on motor vehicles, furniture, refrigerators containing mechanical *1206 freezing units operated by gas or electricity, or radios or any other tangible personal property, located in the State of Mississippi....
Miss.Code Ann. § 27-21-3 (Rev.2010) (emphasis added). MDOR states that it is responsible for administering the tax laws of this state and that the Mississippi Legislature has given it authority to issue subpoenas as part of its enforcement responsibilities. MDOR maintains that Pik-co is subject to the Finance Company Privilege Tax, as well as the subpoena, which MDOR issued to obtain documents regarding Pikco’s failure to pay the taxes.
¶ 5. Pikco claims that it does not have to comply with MDOR’s subpoena because: (1)the Finance Company Privilege Tax is preempted by the National Bank Act; (2) the subpoena is an exercise of a visitorial power, which is prohibited by the National Bank Act, because Pikco is an operating subsidiary of a national bank and is subject to exclusive oversight by the Office of the Comptroller of the Currency (OCC); and (3) Pikco is exempt from the tax under Mississippi Code Section 27-21-3. Each of Pikco’s arguments will be addressed here.
A. State taxation is not preempted by the National Bank Act.
¶ 6. Pikco claims that it is not required to comply with MDOR’s subpoena because Mississippi’s Finance Company Privilege Tax is preempted by the National Bank Act. The National Bank Act is found at 12 U.S.C. Section 1, et seq.[3] The purpose of the National Bank Act, enacted in 1864, was to establish a national banking system “extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the states.” Easton v. State of Iowa, 188 U.S. 220, 229, 23 S.Ct. 288, 47 L.Ed. 452 (1903).
¶ 7. The burden of demonstrating that federal law preempts state law is on the party claiming preemption, in this case, Pikco. Angle v. Koppers, Inc., 42 So.3d 1, 8 (Miss.2010). This Court has held that federal law preempts state law in three situations: (1) where Congress has explicitly preempted state law; (2) where Congress has occupied the entire field; or (3) where there is an actual conflict between federal and state law. Cooper v. Gen. Motors Corp., 702 So.2d 428, 434 (Miss.1997) (citing English, v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270,110 L.Ed.2d 65 (1990)).
¶ 8. First, Congress has not explicitly preempted state law as to taxation. The National Bank Act precludes state regulation of national banks in certain enumerated areas, but state taxation is not one of those areas. In fact, taxation is specifically exempted from the areas preempted by the National Bank Act. Section 548 provides, “For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office *1207 is located.” 12 U.S.C. § 548 (2006).[4] In addition to Section 548, the Code of Federal Regulations provides that state tax laws apply to national banks. “State laws on the following subjects are not inconsistent ■with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers: ... (vi) Taxation ...” 12 CFR § 7.4009(c)(2) (repealed July 21, 2011).
¶ 9. Second, Congress has not occupied the entire field as to national banks. The National Bank Act left several areas to state regulation, so long as the state laws in those areas “only incidentally affect the exercise of national bank powers.” 12 C.F.R. § 7.4009(c)(2) (repealed July 21, 2011). Congress spoke directly to the issue of taxation in 12 U.S.C. Section 548 and 12 C.F.R. Section 7.4009, stating that national banks were subject to state taxation. In most cases, we look for Congress to have preempted an area of law. In this case, Congress specifically exempted taxation from federal regulation and left it to the states.
¶ 10. Turning to the third situation in which federal law could preempt state law, there is no duplicative federal law pertaining to collection of Mississippi state finance taxes. If an area is not preempted by the National Bank Act, state law applies. “National banks remain bound by state laws and regulations, except for those laws substantively preempted by other provisions of the Bank Act.” Wells Fargo Bank N.A. v. Boutris, 419 F.3d 949, 964 (9th Cir.2005). Because state taxation is exempt from federal regulation, there is no actual conflict between federal and state law in this area; thus, federal law will not preempt state law under that theory. As such, national banks and their subsidiaries are subject to state tax laws, such as the Finance Company Privilege Tax.
¶ 11. In sum, federal law does not preempt state law as to state taxation of national banks. Congress has not explicitly preempted state law in this area, Congress has not occupied the entire field, and there is no conflict between federal and state law in this area. The National Bank Act does not preempt state taxation; in fact, it explicitly exempts it, leaving taxation to the states under 12 U.S.C. Section 548 and 12 C.F.R. Section 7.4009(c)(2).[5]
B. MDOR’s subpoena was not an exercise of a visitorial power.
¶ 12. Pikco claims that it is not required to comply with MDOR’s subpoena because the issuance of the subpoena is an exercise of a visitorial power. Pikco’s argument is based on 12 U.S.C. Section 484, which provides:
(a) No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any *1208 committee of Congress or of either House duly authorized....
12 U.S.C.A. § 484(a) (2006). Section 484 was meant to protect the independence of banks by giving the OCC exclusive authority to exercise visitorial powers as to national banks. See 12 C.F.R. § 7.4000(a)(1).[6] See also Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11-15, 127 5.Ct. 1559, 167 L.Ed.2d 389 (2007); Capital One Bank (USA), N.A. v. McGraw, 563 F.Supp.2d 613, 617 (S.D.W.V.2008). Pikco argues that, even though it is not a national bank, the protections of Section 484 apply to it because 12 C.F.R. Section 7.4006 provides, “Unless otherwise provided by Federal law or OCC regulation, State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank.” 12 C.F.R. § 7.4006 (repealed July 21, 2011).
¶ 13. Pikco relies heavily on the United States Supreme Court ease of Watters v. Wachovia Bank. In that case, the Michigan Office of Insurance and Financial Services sought to enforce state registration and inspection requirements on Wachovia Mortgage, a state-chartered mortgage company and subsidiary of a federally-chartered bank. Watters, 550 U.S. at 8-9, 127 S.Ct. 1559. Wachovia Mortgage challenged the requirements as preempted by the National Bank Act. Id. The Supreme Court held, “Wachovia’s mortgage business, whether conducted by the bank itself or through the bank’s operating subsidiary, is subject to OCC’s superintendence, and not to the licensing, reporting, and visitorial regimes of the several States in which the subsidiary operates.” Id. at 7, 127 S.Ct. 1559. The state’s attempt to further regulate the bank’s real estate lending was “duplica-tive state examination, supervision, and regulation,” which was prohibited. Id. at 17, 127 S.Ct. 1559. The Court held that the same applied to Wachovia Mortgage, because operating subsidiaries were treated “as equivalent to national banks with respect to powers exercised under federal law [.]” Id. at 18, 127 S.Ct. 1559 (emphasis added).
¶ 14. Watters is not applicable to today’s case because the area of regulation at issue in that case—real estate lending— was a power “exercised under federal law” and specifically regulated by the National Bank Act. Taxation is left to the states and is not regulated by the National Bank Act. Pikco’s rationale^that even though it is not a national bank, the protections of Section 484 apply to it under 12 C.F.R.
*1209 Section 7.4006 — is flawed because taxation is a matter of state law, not federal law. As the Waiiers Court recognized, “the laws of the States in which national banks or their affiliates are located govern matters the National] B[ank] A[ct] does not address.” Id. at 21, 127 S.Ct. 1559. State law governs taxation, and under state law Pikco is not treated the same as its parent national bank, and the visitorial limitation of Section 484 is not applicable.
¶ 15. Further, regardless of whether Pikco should be protected under Section 7.4006, examination of tax records by state officials is not an exercise of a visitorial power prohibited under Section 484. The Supreme Court has said that “visitorial power” under the National Bank Act “refers to a sovereign’s supervisory powers over corporations.” Cuomo v. Clearing House Ass’n LLC, 557 U.S. 519, 129 S.Ct. 2710, 2721, 174 L.Ed.2d 464 (2009). MDOR’s issuance of a subpoena as a means of enforcing an allowable state tax is not an exercise of a “supervisory power” over Pikco. “[A]ny inquiry into the operation of a bank is not automatically a ‘visitorial power’ [that] is prohibited” under Section 484. Peoples Bank of Danville v. Williams, 449 F.Supp. 254, 259-260 (W.D.Va.1978). “The exclusively federal power to ‘visit’ national banks is not the power to oust all state regulation of those entities.” Wells Fargo, 419 F.3d at 964 (emphasis in original). The OCC has long held that it has “no objections to state officials examining records of national banks for the purpose of ascertaining payment of applicable taxes.” O.C.C. B.C. 59, 1974 WL 21171 (Dec. 9,1974).
¶ 16. State taxation of national banks is allowed and is not preempted by the National Bank Act according to 12 U.S.C. Section 548 and 12 C.F.R. Section 7.4009(c)(2). Any limitations imposed by 12 U.S.C. Section 484, 12 C.F.R. Section 7.4000, or 12 C.F.R. Section 7.4006[7] are not applicable to MDOR’s assessment and enforcement of state taxes. Because MDOR was attempting to enforce state tax laws when it issued the subpoena to Pikco, the issuance of the subpoena was not an exercise of a visitorial power. Pikco is subject to MDOR’s subpoena because it is a permissible means to enforce the state tax law, and limitations otherwise imposed by federal law are not applicable.
C. Pikco is not exempt from the Finance Company Privilege Tax under Mississippi Code Section 27-21-3.
¶ 17. Pikco argues that it is exempt from the Finance Company Privilege Tax under Mississippi Code Section 27-21-3, which provides exemption to state and national banks. It is undisputed that Pik-co is not a state or national bank. However, Pikco claims that it is to be treated the same as its parent national bank according to 12 C.F.R. Section 7.4006, and because its parent national bank would be exempt under Mississippi Code Section 27-21-3, *1210 Pikco also should be exempt. Pikco is correct that, as a licensed operating subsidiary of Pike National Bank, under 12 C.F.R. Section 7.4006, it would be treated the same as its parent national bank with regard to federal law. However, Pikco erroneously attempts to apply 12 C.F.R. Section 7.4006 to the assessment of taxes under Mississippi’s Finance Company Privilege Tax, which is a matter of state law.
¶ 18. It is MDOR’s position that a bank could be exempt from the Finance Company Privilege Tax only under Mississippi Code Section 27-21-3, which is a direct result of the action of the Mississippi Legislature, not the National Bank Act or 12 C.F.R. Section 7.4006. We agree. This Court’s standard regarding tax exemptions is as follows:
Since taxation is the rule and exemption is the exception, and since exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention ... [the] presumption is in favor of taxing power, and [the] burden is on claimant to prove or establish clearly his right to exemption, bringing himself clearly within terms of such conditions that statute may impose.
Miss. State Tax Comm’n v. Med. Devices, Inc., 624 So.2d 987, 990 (Miss.1993) (quoting U.S. v. State of Miss., 578 F.Supp. 348, 349 (S.D.Miss.1984)). Because Section 27-21-3 is a state-granted exemption, Pikco is required to prove that it clearly falls within the terms of the exemption. Id. See Miss.Code Ann. § 27-21-3 (Rev.2010).
¶ 19. Pikco’s claim of exemption from the Finance Company Privilege Tax fails as a matter of law, because Pikco is not a state or national bank. Pikco’s contention that it is exempt under 12 C.F.R. Section 7.4006, because state laws apply to a national bank’s operating subsidiary to the same extent as to the national bank, is an erroneous attempt to combine state and federal law. Pikco is not a state or national bank, so it is not exempt under Mississippi Code Section 27-21-3.
CONCLUSION
¶ 20. The circuit court held that Pikco, as an operating subsidiary of a national bank, was not required to comply with MDOR’s subpoena under the provisions of 12 C.F.R. Sections 7.4000 and 7.4006. The circuit court erred in basing its decision on federal law when this is a matter of state law. According to 12 U.S.C. Section 548 and 12 C.F.R. Section 7.4009, state taxation is not preempted by the National Bank Act; therefore, Pikco is subject to the Finance Company Privilege Tax. Because taxation is a matter of state law, federal protections and limitations do not apply. Finally, Pikco cannot claim exemption from the tax under Section 27-21-3, because it is not a state or national bank.
¶ 21. MDOR has the authority to enforce state tax laws against Pikco, and Pikco is subject to the subpoena issued by MDOR. MDOR’s use of its statutory subpoena power in the administration of the Finance Company Privilege Tax is not preempted by the National Bank Act. For these reasons, we reverse the judgment of the Circuit Court for the First Judicial District of Hinds County and remand for proceedings consistent with this opinion.
¶ 22. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR. KITCHENS, J., NOT PARTICIPATING.

. MDOR also presented a second issue. In the event that this Court found MDOR's subpoena power was preempted by the National Bank Act, MDOR asked whether the circuit court’s order impeded its authority to issue the tax assessment without a subpoena. Because the first issue is determinative, the second issue will not be addressed.

. We do not address whether Pikco is subject to the specific amount of taxes assessed by MDOR following the circuit court’s decision.

. The National Bank Act was revised by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), which went in effect July 21, 2011. The official title of the bill was: "A bill to promote the financial stability of the United States by improving accountability and transparency in the financial system, to end ‘too big to fail,’ to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes.” H.R. 4173, 111th Cong. (2009). The Dodd-Frank Act changed the financial regulatory structure, put regulation of the financial industry in the government’s hands, and increased oversight of financial institutions.

. Initially, national banks were immune from state taxation. See Miss. State Tax Comm’n v. Brown, 188 Miss. 483, 193 So. 794, 798 (1940). However, Section 548 was amended in 1969 to remove immunity from state taxation. The amended statute went into effect in 1972, and national banks are now treated the same as state banks for the purpose of state taxation. Lake County Nat’l Bank of Painesville v. Kosydar, 36 Ohio St.2d 189, 305 N.E.2d 799, 802 (Ohio 1973). The amendment was meant to "promote equality in state taxation of state banks vis-á-vis national banks, and banks vis-á-vis non-bank corporations.” U.S. v. State Bd. of Equalization, 639 F.2d 458, 464 (9th Cir.1980).

. Section 7.4009 was rescinded by the Dodd-Frank Act, but 12 U.S.C. Section 548 is still in place, leaving national banks subject to state taxation. See 12 U.S.C. § 548 (2006).

. Section 7.4000(a) provides:
(1)Only the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks, except as provided in paragraph (b) of this section. State officials may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or prosecuting enforcement actions, except in limited circumstances authorized by federal law. However, production of a bank's records (other than non-public OCC information under 12 CFR part 4, subpart C) may be required under normal judicial procedures.
(2) For purposes of this section, visitorial powers include: (i) Examination of a bank; (ii) Inspection of a bank's books and records; (iii) Regulation and supervision of activities authorized or permitted pursuant to federal banking law; and (iv) Enforcing compliance with any applicable federal or state laws concerning those activities.
(3) Unless otherwise provided by Federal law, the OCC has exclusive visitorial authority with respect to the content and conduct of activities authorized for national banks under Federal law.
12 C.F.R. § 7.4000(a)(l)-(3) (this version was effective until July 21, 2011, but changes after the Dodd-Frank Act were minimal, see 12 C.F.R. § 7.4000(a) (2012)).

. The Dodd-Frank Act rescinded 12 C.F.R. Section 7.4006; therefore, an operating subsidiary is no longer treated the same as its parent national bank. The following provision was added to clarify the law applicable to national bank subsidiaries; "No provision of this title ... shall be construed as preempting, annulling, or affecting the applicability of State law to any subsidiary, affiliate, or agent of a national bank (other than a subsidiary, affiliate, or agent that is chartered as a national bank).” Dodd-Frank Act, Pub.L. No. 111-203, § 1045, 124 Stat. 1376, 2017 (2010) (to be codified at 12 U.S.C. § 25b). This change overturned judicial precedent like Watters and rescinded preemption of state law as to national bank subsidiaries and affiliates. See O.C.C. Inter. Ltr. No. 1132, 2011 WL 2110224 (May 12, 2011) ("The [Dodd-Frank] Act eliminates preemption of state law for national bank subsidiaries, agents[,] and affiliates.”).